Philip Gregory BYRD, Lucy Leasing
Co., LLC, and PGB Air, Inc.,
Appellants

v.

VICK, CARNEY & SMITH LLP,
Cantey Hanger LLP, and Nancy
Ann Simenstad, Appellees.

No. 02–11–00468–CV.

Court of Appeals of Texas,
Fort Worth.

Aug. 1, 2013.

Rehearing Overruled Sept. 12, 2013.

Lindsey M. Rames, Rames Law Firm, P.C., Dallas, TX, for Appellants.

Russell R. Barton, Roland K. Johnson, Johnson & J. Zach Burt, Harris, Finley & Bogle, P.C., Lisa V. Lumley, Joseph W. Spence & M. Keith Ogle, Shannon, Gracey, Ratliff & Miller, LLP, Fort Worth, TX, for Appellees.

Nancy Ann Simenstad, Aledo, TX, pro se.

PANEL: LIVINGSTON, C.J.; GARDNER and MEIER, JJ.

## OPINION

TERRIE LIVINGSTON, Chief Justice.

This is an appeal from the trial court's final judgment incorporating a partial summary judgment and an order of dismissal. We reverse and remand in part and affirm in part.

## Background

Appellant Philip Gregory Byrd and appellee Nancy Ann Simenstad were divorced in Parker County, Texas, in August 2008; the judge of the 415th District Court signed an agreed decree on August 11, 2008 and a decree nunc pro tunc on November 17, 2008. At different times during the divorce proceedings, appellees Vick, Carney & Smith LLP and Cantey Hanger LLP represented Nancy. In August 2010, Philip, Lucy Leasing Co., LLC, and PGB Air, Inc. sued appellees, bringing claims arising from appellees' alleged actions during and after the divorce proceedings. Lucy Leasing and PGB Air were companies formed by Philip before the divorce; a majority of the "right, title, and interest" in both companies was awarded to Philip in the agreed decree.[1] Appellants brought claims for aiding and abetting under family code section 42.003 (child

---

1. The interest in the companies was not confirmed as Philip's separate property; instead, all "right, title, and interest" in both companies was divided between the parties in the agreed decree. Nothing in the record shows the ownership structure of these companies.

custody interference), conspiracy, fraud, conversion, defamation, unfair debt collection practices, intentional infliction of emotional distress (IIED), unjust enrichment, and violations of the temporary orders and final decree.

On January 27, 2011, Cantey Hanger filed a motion to dismiss and motion for summary judgment on all of appellants' claims. Vick Carney filed a motion for summary judgment, or in the alternative a motion to dismiss, in March 2011. Nancy filed a pro se motion to dismiss and for summary judgment.

Appellants filed a second amended petition in May 2011, in which they removed their section 42.003 child custody interference allegation from their aiding and abetting claim and removed their claims regarding violation of the decree and temporary orders. On June 3, the trial court heard the summary judgment motions and granted the motions of Cantey Hanger and Vick Carney on all of appellants' claims. The trial court denied Nancy's motion, however.

Nancy filed a second motion to dismiss and for summary judgment, which the trial court ultimately granted, dismissing all of appellants' claims against Nancy and making all of the orders final and appealable. *See Lehmann v. Har–Con Corp.,* 39 S.W.3d 191, 195 (Tex.2001).

## Points on Appeal

Appellants bring nine points. In their first five points, they contend the trial court erred by concluding it had no jurisdiction over their claims against Nancy for fraud, conspiracy, conversion, defamation, and IIED. In their sixth through ninth points, they contend that the trial court erred by granting summary judgment for Cantey Hanger on their claims for fraud, conspiracy, aiding and abetting, and IIED. Although appellants' notice of appeal indicates the intent to appeal the summary judgment for Vick Carney, appellants' prayer asks this court to reverse only the summary judgment for Cantey Hanger and the order dismissing the claims against Nancy. Therefore, we will review only the orders for Cantey Hanger and Nancy. *See Malooly Bros., Inc. v. Napier,* 461 S.W.2d 119, 121 (Tex.1970); *Murphy v. Gruber,* 241 S.W.3d 689, 700 (Tex.App.-Dallas 2007, pet. denied).

## Motion to Dismiss

Appellants did not challenge the trial court's dismissal of their unjust enrichment claim; thus, we will review the propriety of the dismissal order as to their claims for fraud, conspiracy, conversion, defamation, and IIED only.

■ Nancy's motion contends that because appellants' claims are based on the final decree—and thus are more properly brought in an enforcement action—they must be brought in the divorce court. According to Nancy, all of the claims against her are based on appellants' allegations that she failed to comply with the property division in the decree and that she failed to comply with the decree's provisions regarding possession of and access to the couple's children.

Although Nancy characterizes the suit as an enforcement action,[2] appellants, by their claims, do not seek to enforce the

**2.** *See* Tex. Const. art. V, § 8; Tex. Gov't Code Ann. § 24.008 (West 2004); *see also* Tex. Fam.Code Ann. § 9.001 (West 2006) ("A party affected by a divorce decree ... may request enforcement of that decree by filing a suit to enforce as provided by this chapter in the court ·that rendered the decree."), § 9.002 ("The court that rendered the decree of divorce or annulment retains the power to enforce the property division as provided in Chapter 7.").

provisions of the decree; rather, they seek damages based on alleged wrongful conduct by Nancy during and after the divorce proceedings. *See James v. Easton,* 368 S.W.3d 799, 802–04 (Tex.App.-Houston [14th Dist.] 2012, pet. denied) (holding that claims against opposing litigant for wrongful conduct in lawsuit need not be brought in the suit in which the conduct occurs and can be the basis of an independent tort). Appellants' fraud and conspiracy claims are based on their allegations that Nancy conspired with Cantey Hanger to falsify an airplane bill of sale after the divorce and that she withdrew large amounts of money from a PGB bank account knowing she did not have the authority to do so. The conversion claims are likewise based on Nancy's alleged withdrawal of money from Lucy Leasing and PGB's bank account. The defamation and IIED claims are based on alleged actions occurring after the decree. These are not claims attempting to enforce the terms of the decree. *See Fernander v. Fernander,* No. 03–08–00222–CV, 2010 WL 1814672, at *3 (Tex. App.-Austin May 7, 2010, no pet.) (mem. op.); *Solares v. Solares,* 232 S.W.3d 873, 878 (Tex.App.-Dallas 2007, no pet.).

We conclude and hold that Nancy's claims are not enforcement claims for which the divorce court has exclusive, continuing jurisdiction[3] and, thus, that the trial court erred by granting the motion to dismiss on that ground.[4] We sustain appellants' first through fifth issues.

## Summary Judgment for Cantey Hanger

Appellants challenge the trial court's summary judgment for Cantey Hanger on their fraud, conspiracy, aiding and abet-

ting, and IIED claims only. Therefore, we will review the propriety of the summary judgment on those claims only.

## Standard of Review

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim,* 315 S.W.3d 860, 862 (Tex.2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding,* 289 S.W.3d 844, 848 (Tex.2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker,* 249 S.W.3d 392, 399 (Tex.2008). A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez,* 315 S.W.3d 494, 508 (Tex.2010); *see* Tex.R. Civ. P. 166a(b), (c). The defendant is required to meet the plaintiff's case as pleaded to demonstrate that the plaintiff cannot prevail. *Cook v. Brundidge, Fountain, Elliott & Churchill,* 533 S.W.2d 751, 759 (Tex.1976).

## Applicable Facts

Appellants alleged in their second amended petition that Cantey Hanger and Nancy falsified a bill of sale for a Piper Seminole No. N21113 owned by Lucy Leasing to show that Nancy was a manager of Lucy Leasing and had authority to transfer ownership of the airplane. According to appellants, Cantey Hanger and Nancy did so to shift tax liability for the

---

**3.** *See Chavez v. McNeely,* 287 S.W.3d 840, 844–45 (Tex.App.-Houston [1st Dist.] 2009, no pet.) (holding that sections 9.001 and 9.002 do not provide divorce court with exclusive jurisdiction even over enforcement actions).

**4.** We do not address the summary judgment part of Nancy's motion because the trial court, by dismissing her claims based on her jurisdictional arguments, did not rule on the motion.

airplane sale to Lucy Leasing. Appellants also alleged that Cantey Hanger "purposefully failed to notify [Philip] and the [trial] Court of their changes to the Final Decree to Divorce so that the Court would grant the Motion for Judgment Nunc Pro Tunc and effectively change the division of debts past the date allowed for modification of the Decree." Appellants do not challenge summary judgment on the second allegation, only the first relating to alleged falsification of the airplane bill of sale, which is the basis of their fraud, conspiracy, and aiding and abetting claims.

Specifically, appellants alleged as their aiding and abetting claim that

> Defendant CANTEY HANGER assisted Defendant SIMENSTAD to commit fraud in the sale of aircraft belonging to Plaintiff LUCY. Defendant CANTEY HANGER aided Defendant SIMENSTAD by falsifying the bill of sale for the aircraft listing Defendant SIMENSTAD as a manager of Plaintiff LUCY and having Defendant SIMENSTAD sign as a manager of LUCY. Defendant CANTEY HANGER further assisted Defendant SIMENSTAD to evade tax liability for her sale of the aircraft and to shift the tax liability to Plaintiff LUCY.

Their conspiracy claim is that

> Defendant CANTEY HANGER conspired with Defendant SIMENSTAD to complete a fraudulent bill of sale (a federal document) for an airplane awarded to her in the Decree by signing as "Nancy Byrd" and listing her title as "Manager" of Plaintiff LUCY, even though Defendant CANTEY HANGER and SIMENSTAD were aware that Defendant SIMENSTAD was never an officer, owner or manager of Plaintiff LUCY and that she changed her last name back to "Simenstad." Defendants CANTEY HANGER and SIMENSTAD did so to fraudulently avoid tax liability, shifting it to Plaintiff LUCY.

Finally, under their fraud cause of action, they claimed that

> Defendants CANTEY HANGER and SIMENSTAD, with the intent to avoid paying taxes and with the intent to shift tax liability to Plaintiff LUCY, falsified an aircraft bill of sale (a federal document) and refused to properly change the registration of the aircraft. Defendant SIMENSTAD was not allowed by law to sell the aircraft directly to a purchaser on behalf of Plaintiff LUCY.

Cantey Hanger moved for summary judgment on the fraud, aiding and abetting, and conspiracy claims on the ground that it had no duty to Philip as it was not in privity with him in the divorce, that it was immune from liability for actions taken in its representation of Nancy in the divorce, and that for those reasons its alleged actions were not fraudulent as a matter of law.[5] According to Cantey Hanger, all of the alleged actions it took were in the course of representing Nancy in the

---

**5.** In its "Reply In Support Of Motion ... For Summary Judgment," Cantey Hanger contended that as a matter of law it could not have committed fraud in the sale of the aircraft because it was awarded to Nancy in the divorce. Additionally, Cantey Hanger contended that appellants "did not take any action in reliance on the alleged 'false bill of sale.'" But Cantey Hanger did not specifically amend its motion for summary judgment to raise additional grounds in its reply. Therefore, we do not consider its additional arguments in that document as additional grounds for summary judgment. *See, e.g., Reliance Ins. Co. v. Hibdon*, 333 S.W.3d 364, 378 (Tex. App.-Houston [14th Dist.] 2011, pet. denied) (op. on reh'g) ("A movant is not entitled to use its reply to amend its motion for summary judgment or to raise new and independent summary-judgment grounds."); *Garcia v. Garza*, 311 S.W.3d 28, 36 (Tex.App.-San Antonio 2010, pet. denied).

divorce suit.[6] As evidence, Cantey Hanger attached the decree, the decree nunc pro tunc, and affidavits of two of its attorneys. Importantly, Cantey Hanger did not allege no-evidence grounds in its motion for summary judgment.

In the part of the agreed decree entitled, "Division of Marital Estate," Philip was awarded "[a]ll right, title, and interest in PGB Air, Inc. and Lucy Leasing Co., LLC, except as specifically set forth in Section IX(B)(4)" of the decree. That section awards Nancy as her separate property three airplanes: the Piper Seminole No. N21113, a Piper Seminole number N2950A, and an aircraft numbered N2816R.[7] That section also states that Philip "shall not remove any part of said planes or otherwise alter their condition."

The decree ordered each party to execute—and the attorneys for the nonsignatory parties to draft—documents to transfer ownership of the airplanes to Nancy within ten days of the date of the decree. The decree states that Nancy is not liable for any encumbrance on the airplanes, but it further provides that Nancy is responsible for any ad valorem taxes, "liens, assessments, or other charges due or to become due on the personal property awarded to" her. The decree also ordered that each party should file 2007 and 2008 income taxes individually and would be entitled to 100 percent of any refund received. Philip admitted that he agreed to the terms of the August 2008 decree.

The November 17, 2008 decree nunc pro tunc contains most of the same provisions as the August 2008 decree.[8]

In one of the affidavits, an attorney averred that he represented Nancy in the divorce, post-judgment enforcement proceedings, and Byrd's personal bankruptcy proceeding. He also stated that "[a]ll actions taken by Cantey Hanger with respect to Plaintiffs were made in the course and scope of representing" Nancy. He further averred that "Plaintiff Byrd and his two defunct business entities, Lucy Leasing Co., LLC and PGB Air, Inc., have never had an attorney-client relationship with Cantey Hanger but have always been adverse to Cantey Hanger's former client," Nancy. The other attorney averred that she represented Nancy in the divorce and that all actions taken by the firm were in the course and scope of representing Nancy.

Appellants attached to their summary judgment response an affidavit from Philip in which he stated that Nancy had never been an "owner, officer, manager or director of Lucy Leasing or PGB Air." He further averred as follows:

Nancy ... sold one of the airplanes that was awarded to her in the Divorce Decree. Cantey Hanger was to draft the documents to effectuate the transfer of the airplane for me to sign on behalf of Lucy Leasing. I never received the transfer documents for me to sign. La-

---

6. Cantey Hanger raised other grounds for summary judgment directed specifically at the enforcement claims, which appellants dropped from their second amended petition; therefore, we do not address those grounds.

7. Two other planes were awarded to Philip in the "Division of Marital Estate" section of the agreed decree: a Cessna No. 7295E and a Cessna No. 3340S; nothing in the record indicates in whose name those planes were registered or titled.

8. Philip disputes that the decree nunc pro tunc merely corrected a clerical error; however, because he did not challenge the summary judgment as to his allegations related to the entry of the decree nunc pro tunc, we will not address the dispute. *See Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970); *Murphy v. Gruber*, 241 S.W.3d 689, 700 (Tex.App.-Dallas 2007, pet. denied).

ter, I found out that Nancy . . . had sold the plane directly to another purchaser. She signed the bill of sale as "manager" of Lucy Leasing when she was never a manager of Lucy Leasing and I was the sole manager of Lucy Leasing. By doing this, she made Lucy Leasing the seller of the aircraft to the purchaser and responsible for sales tax. Neither she nor Cantey Hanger ever transferred the airplane to Nancy. . . . And they did not complete the registration for the airplane when they sold it. The aircraft is still improperly registered to Lucy Leasing to date [May 26, 2011].

Nothing in the record indicates in whose name the other two planes were registered or titled at the time of the divorce or summary judgment proceeding.

Appellants also produced a bill of sale for the Piper Seminole No. N21113 dated November 11, 2009. The trial court struck the bill of sale on Cantey Hanger's hearsay objection. Because appellants do not challenge the trial court's ruling on Cantey Hanger's objections, we may not consider the bill of sale. *See Kaufman v. Islamic Soc'y of Arlington*, 291 S.W.3d 130, 137 n. 15 (Tex.App.-Fort Worth 2009, pet. denied).

**Applicable Law**

Texas law authorizes attorneys to "practice their profession, to advise their clients, and to interpose any defense or supposed defense, without making themselves liable for damages." *Kruegel v. Murphy*, 126 S.W. 343, 345 (Tex.Civ. App.-Dallas 1910, writ ref'd); *see Renfroe v. Jones & Assocs.*, 947 S.W.2d 285, 287 (Tex.App.-Fort Worth 1997, writ denied). The purpose behind this well-established rule is to allow an attorney to fulfill his duty and zealously represent his clients without subjecting himself to the threat of liability. *Dixon Fin. Servs., Ltd. v. Greenberg, Peden, Siegmyer & Oshman, P.C.*,

No. 01–06–00696–CV, 2008 WL 746548, at *7 (Tex.App.-Houston [1st Dist.] Mar. 20, 2008, pet. denied) (mem. op. on reh'g). An attorney who could be held liable for statements made or actions taken in the course of representing his client would be forced constantly to balance his own potential exposure against his client's best interest. *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 405 (Tex.App.-Houston [1st Dist.] 2005, pet. denied). Such a result would act as a severe and crippling deterrent to the ends of justice because a litigant might be denied a full development of his rights. *Dixon Fin. Servs., Ltd.*, 2008 WL 746548, at *7.

To promote zealous representation, courts have held that an attorney has "qualified immunity" from civil liability, with respect to nonclients, for actions taken in connection with representing a client in litigation. *Alpert*, 178 S.W.3d at 405. This qualified immunity generally applies even if conduct is wrongful in the context of the underlying lawsuit. *Id.; Renfroe*, 947 S.W.2d at 287–88. For example, a third party has no independent right of recovery against an attorney for filing motions in a lawsuit, even if frivolous or without merit, although such conduct is sanctionable or contemptible as enforced by the statutory or inherent powers of the court. *Alpert*, 178 S.W.3d at 405. Courts have refused to acknowledge an independent cause of action in such instances "because making motions is conduct an attorney engages in as part of the discharge of his duties in representing a party in a lawsuit." *Id.* Under the same reasoning, an attorney for an opposing party may not be held liable for fraud merely for making representations to the opposing party in litigation that further the best interests of his own clients. *E.g., Chu v. Hong*, 249 S.W.3d 441, 446 & n. 19 (Tex.2008); *McCamish, Martin, Brown & Loeffler v.*

*F.E. Appling Interests,* 991 S.W.2d 787, 794 (Tex.1999). If an attorney's conduct violates his professional responsibility, the remedy is public, not private. *Renfroe,* 947 S.W.2d at 287.

 This rule of qualified immunity focuses on the type of conduct in which the attorney engages rather than on whether the conduct was meritorious in the context of the underlying lawsuit. *Id.* at 288. "[I]t is the *kind*—not the *nature*—of conduct that is controlling." *Dixon Fin. Servs., Ltd.,* 2008 WL 746548, at *7; see *Taco Bell Corp. v. Cracken,* 939 F.Supp. 528, 532–33 (N.D.Tex.1996) (mem. op. and order). Thus, an attorney cannot be held liable to a third party for conduct that requires "the office, professional training, skill, and authority of an attorney." *Dixon Fin. Servs., Ltd.,* 2008 WL 746548, at *7 (quoting *Miller v. Stonehenge/Fasa–Texas, JDC, L.P.,* 993 F.Supp. 461, 464 (N.D.Tex.1998) (order)). Incorrect, meritless, and even frivolous conduct is not actionable if it satisfies this standard. *Id.*

 An attorney's protection from liability is not boundless, however. *Id.* at *8. An attorney can be held liable by a third-party for actions that are not part of the discharge of his duties to his client. *See Alpert,* 178 S.W.3d at 406; *Bradt v. West,* 892 S.W.2d 56, 71 (Tex.App.-Houston [1st Dist.] 1994, writ denied). If a lawyer participates independently in fraudulent activities, his action is "foreign to the duties of an attorney." *Alpert,* 178 S.W.3d at 406; *see Poole v. Houston & T.C. Ry. Co.,* 58 Tex. 134, 137 (1882). In other words, the law does not provide absolute immunity for every tort committed by a lawyer that may be tangentially related to his professional role or which may occur during litigation. *See Bradt,* 892 S.W.2d at 71–72; *see also Miller,* 993 F.Supp. at 464. By way of extreme example, an attorney who assaults the opposing party or

lawyer during trial could be held liable for that act. *See Bradt,* 892 S.W.2d at 72.

 "An attorney who *personally* steals goods or tells lies on a client's behalf may be liable for … fraud in some cases." *Chu,* 249 S.W.3d at 446 (emphasis added); *see McCamish, Martin, Brown & Loeffler,* 991 S.W.2d at 793–94 (noting that the privity requirement prohibits a third party from suing an attorney for legal malpractice but not other torts, such as negligent misrepresentation); *Likover v. Sunflower Terrace II, Ltd.,* 696 S.W.2d 468, 472 (Tex. App.-Houston [1st Dist.] 1985, no writ) (holding that "[a]n attorney is liable if he knowingly commits a fraudulent act that injures a third person, or if he knowingly enters into a conspiracy to defraud a third person" in the course of representing his client). To be held so liable for conspiracy, the attorney must have agreed to the *injury* to be accomplished, not merely the conduct ultimately resulting in injury. *Chu,* 249 S.W.3d at 446.

## Analysis

 Here, Cantey Hanger's preparation of a bill of sale to facilitate transfer of an airplane awarded to its client in an agreed divorce decree was conduct in which an attorney engages to discharge his duties to his client. *See Dixon Fin. Servs., Ltd.,* 2008 WL 746548, at *8. But as pled by appellants, the conduct complained of is the intentional misrepresentation of Nancy's status in the bill of sale to a third party as a "Manager" of Lucy Leasing for the purpose of unlawfully relieving Nancy of tax liability for the sale and shifting that tax liability to Lucy Leasing. The focus of our analysis is on the kind—not the nature—of the attorney's alleged conduct. *Id.* at *8; *Renfroe,* 947 S.W.2d at 288. Although the preparation of a bill of sale to transfer an airplane is not conduct "foreign to the duties of an attorney," the

intentional and knowing inclusion of false information in a bill of sale to assist a client in avoiding tax liability is. *Cf. Estate of Stonecipher v. Estate of Butts*, 686 S.W.2d 101, 103 (Tex.1985); *Likover*, 696 S.W.2d at 472. *But cf. Dixon Fin. Servs., Ltd.*, 2008 WL 746548, at *9 ("Even when taken as true and construed broadly, Dixon Financial's petition alleges that the underlying purpose of the communications was for the attorneys to secure satisfaction of their clients' arbitration award.")

The alleged conduct here did not occur in an adversarial context vis a vis Nancy and Lucy Leasing. The subsequent sale of the airplane to a third party after it had already been awarded to Nancy in the agreed decree was not required by, and had nothing to do with, the divorce decree.[9] Because of the summary judgment standard of review, we are not concerned with whether appellants proved or even provided evidence of their allegations regarding the bill of sale because Cantey Hanger did not raise that issue in its motion for summary judgment. *See, e.g., Delgado v. Combs*, No. 07–11–00273–CV, 2012 WL 4867600, at *2 (Tex.App.-Amarillo Oct. 15, 2012, no pet.) (mem. op.). Instead, we must address the narrow issue of whether Cantey Hanger is immune as a matter of law for its actions *as alleged by appellants. Nat'l City Bank of Ind. v. Ortiz*, 401 S.W.3d 867, 878 n. 4 (Tex.App.-Houston [14th Dist.] 2013, no pet.) (op. on

reh'g); *Brocail v. Detroit Tigers, Inc.*, 268 S.W.3d 90, 109 (Tex.App.-Houston [14th Dist.] 2008, pet. denied), *cert. denied*, 558 U.S. 877, 130 S.Ct. 254, 175 L.Ed.2d 131 (2009). Under the reasoning of the above cases, such alleged actions, if true, would not shield an attorney from liability simply because he or she undertook those actions in the course of representation of a client. *Cf. Toles v. Toles*, 113 S.W.3d 899, 912 (Tex.App.-Dallas 2003, no pet.) (holding that similar argument by defendants—that they could not be liable because their actions were taken during representation of client—was not sufficient to support summary judgment on claim for aiding and abetting, breach of fiduciary duty, and conspiracy).

Accordingly, whether the allegations are true or not—and we must consider them true for purposes of reviewing the summary judgment[10]—the alleged actions are outside the scope of representation of a client and, thus, the trial court should not have granted summary judgment on the fraud, conspiracy, and aiding and abetting claims for that reason. We conclude and hold that the trial court erred by granting summary judgment for Cantey Hanger on the specific grounds raised in its motion as to appellants' fraud, conspiracy, and aiding and abetting claims.[11] We sustain appellants' sixth through eighth points.

---

9. For the same reason, Cantey Hanger's alternative claim that only the divorce court had jurisdiction over appellants' claims fails. *See, supra*, at 775–76. We note that Cantey Hanger represented Nancy in a post-divorce suit against one of Philip's divorce attorneys and his law firm for the attorney's alleged negligence during the divorce. In the suit, which was filed in the 96th District Court of Tarrant County, Nancy alleged that the attorney and Southside Bancshares negligently allowed Philip to obtain and cash a check consisting of community funds, knowing that Philip had

no intention of giving Nancy her share of the money.

10. Our discussion of these issues is dictated by the standard of review, and should not be considered a commentary on the viability of appellants' claims on other grounds, especially considering that appellants, in their briefing in this court, accuse Cantey Hanger and Nancy of "[t]he commission of a crime."

11. Our holding is limited to these very narrow grounds.

Also in appellants' second amended petition, Philip alleged as facts supporting his IIED claim (1) that Cantey Hanger and Nancy used the couple's children as "bait" by making Philip wait to pick them up at Nancy's house while a process server was on the way, (2) that Cantey Hanger and Nancy contacted his family, friends, and business contacts for the purpose of defaming Philip by telling them he had a sexually transmitted disease to cause him emotional distress and collect money from him, and (3) that they both lied to the couple's children by telling them that he did not pay child support and did not care about them. Cantey Hanger moved for summary judgment on this claim on the following ground in addition to the immunity ground: "Plaintiff's [IIED] cause of action is precluded by the laundry list of other alleged causes of action brought by Plaintiffs and, therefore, should be disposed of by summary judgment."[12]

**As** a matter of law, the first allegation—that Cantey Hanger assisted Nancy in using the children as "bait" by advising her to make Philip wait while a process server was on the way—is not actionable because Cantey Hanger's advice was made during the course of representing Nancy in the divorce, and attempting to obtain service of process is conduct in which an attorney must necessarily engage. *See Dixon Fin. Servs., Ltd.*, 2008 WL 746548, at *8.

**Philip's** second and third allegations are related to conduct occurring both during and after the divorce. Cantey Hanger contends that other causes of action alleged in the second amended petition preclude an IIED action. IIED is a gap-filler tort, "judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Hoffmann–La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004). When the gravamen of a complaint is covered by another common-law or statutory tort, IIED is not available. *Id.*

Philip included the second and third allegations as grounds supporting his defamation claims, and the gravamen of those allegations is that Philip was defamed as a result. Thus, IIED is not available to Philip as a cause of action against Cantey Hanger, and the trial court did not err by granting summary judgment for Cantey Hanger on that cause of action. *See id.* at 448; *Draker v. Schreiber*, 271 S.W.3d 318, 323 (Tex.App.-San Antonio 2008, no pet.). We therefore overrule appellants' ninth point.

### Conclusion

Having sustained all of appellants' first through eighth points, we reverse the trial court's order dismissing the fraud, conspiracy, conversion, defamation, and IIED claims against Nancy, and we reverse the

---

12. In its reply to appellants' summary judgment response, Cantey Hanger also states that (1) a cause of action for IIED is barred because an attorney is supposed to attempt to obtain service at times when a party is known to be or suspected to be likely to appear; therefore, such actions were not extreme and outrageous, (2) because the petition itself does not allege that Cantey Hanger told anyone about the sexually transmitted disease and if it did, it was not done so maliciously and with knowing falsity, the allegation cannot support an allegation of IIED, and (3) and because the allegations regarding the children are not extreme and outrageous and unsupported by admissible evidence, they are barred. Cantey Hanger did not move for a summary judgment on these grounds, however, so the trial court could not—and we cannot—consider them. *See, e.g., Reliance Ins. Co.*, 333 S.W.3d at 378; *Garcia*, 311 S.W.3d at 36.

trial court's summary judgment for Cantey Hanger on the fraud, conspiracy, and aiding and abetting claims only. We remand this case to the trial court for further proceedings on those claims only. We affirm the remainder of the summary judgment for Cantey Hanger, the remainder of the dismissal order for Nancy, and the summary judgment for Vick Carney.[13]

GARDNER, J., filed a concurring and dissenting opinion.

ANNE GARDNER, Justice, concurring and dissenting.

## Introduction

I respectfully dissent from the majority's decision as to Byrd's claims for fraud, conspiracy, and aiding and abetting alleged by Appellant Byrd (and the two corporations awarded to him in the divorce).[1] The majority agrees that "Cantey Hanger's preparation of a bill of sale to facilitate transfer of an airplane awarded to [Nancy] in an agreed divorce decree was conduct in which an attorney engages to discharge his duties to his client" and that such conduct was not "foreign to the duties of an attorney." Maj. Op. at 780. But the majority then concludes that the same alleged conduct was "foreign to the duties of an attorney" because Byrd alleged that Cantey Hanger intentionally included false information in the bill of sale for Nancy's airplane to shift sales tax liability to Byrd, which conduct Byrd labels as "fraud," and that the alleged conduct was thus also outside the course of Cantey Hanger's representation of Nancy in the underlying divorce litigation. Id.

I cannot agree with either holding, both of which focus solely on Byrd's own conclusory labeling of Cantey Hanger's alleged conduct as fraud, rather than on the type of conduct, which, as stated above, the majority agrees was in the course of Cantey Hanger's representation of Nancy and not foreign to the duties of an attorney. The majority correctly states the rule but seems not to apply it: whether the litigation immunity under which an attorney generally owes no duty to a non-client for conduct in the course of representing his own client in litigation focuses on the "type of conduct in which the attorney engages, not on whether the conduct was meritorious in the context of the underlying lawsuit." Id.

Under the majority's reasoning, by mere artful pleading labeling just about any conduct of counsel in the course of representing the opposing party in prior litigation as "fraud," the losing party to the litigation can invoke the exception for fraudulent or malicious conduct to avoid the long-established litigation immunity in Texas that protects lawyers from liability to opposing parties, and the burden is then on the attorney to conclusively disprove the pleaded exception in order to prevail on a summary judgment. This is not and should not be the law. I would affirm the summary judgment in favor of Cantey Hanger because the law firm conclusively established its immunity for the alleged conduct that occurred in the course of its representation of Nancy in the underlying divorce litigation and hold that the burden then shifted to Byrd to plead and offer proof raising an issue of fact that his suit falls within the fraud exception to the litigation immunity, which he failed to do.

## No duty based on attorney immunity

Byrd first argues that the alleged fraud by Cantey Hanger in assisting Nancy to

---

13. *See Jacobs v. Satterwhite,* 65 S.W.3d 653, 655–56 (Tex.2001).

1. As apparent from the context within this opinion, I use the name "Byrd" to describe Philip Byrd individually or the appellants collectively.

sell her airplane to a purchaser occurred after the divorce was final, that Cantey Hanger's adversarial representation of Nancy in the divorce litigation ended when the decree was finalized, and thus that Cantey Hanger is not entitled to immunity from liability to Byrd because its conduct was not committed in the course of its representation of Nancy "in the litigation." The majority accepts Byrd's argument that Cantey Hanger's adversarial representation of Nancy ended when the divorce decree was signed. But the summary judgment record conclusively shows otherwise.

Byrd acknowledges that Cantey Hanger continued to represent Nancy against Byrd (who now resides in Costa Rica) after the divorce decree was finalized by its ongoing efforts to collect $150,000 awarded to Nancy in the decree, in assisting her in recovering a judgment for that amount in Byrd's bankruptcy, and in filing a lien against the house awarded to Byrd in the decree.

Moreover, both Byrd and the majority acknowledge that the divorce decree expressly ordered the attorneys for the "non-signing" parties to draft the documents necessary to effectuate the transfers contemplated in the decree after the decree was finalized, including "documents necessary to transfer ownership of airplanes" awarded to Nancy within ten days of the date of the decree. *Id.* at 778. As the attorneys representing Nancy as the "non-signing" party, it was Cantey Hanger's responsibility, as ordered in the decree and thus in the course of its continued representation of Nancy, to draft the documents for transfer of ownership of the airplanes awarded to Nancy.[2] In light of the foregoing, I am puzzled by the majority's statement that drafting of documents for transfer and sale of the airplane after it had been awarded to Nancy by the decree "was not required by, and had nothing to do with, the decree." Maj. Op. at 780–81. Even Byrd's affidavit (quoted by the majority) in support of his response to Cantey Hanger's motion for summary judgment acknowledges that the trial court ordered Cantey Hanger in the divorce decree to draft the documents to effectuate the transfer of the airplane in question for Byrd to sign.

The general rule is that persons not in privity with an attorney cannot sue the attorney for legal malpractice. *See, e.g., Barcelo v. Elliott,* 923 S.W.2d 575, 577 (Tex.1996) (holding that a lawyer owes duty of care only to his client). For over 100 years, Texas courts have held that attorneys are authorized to "practice their profession, to advise their clients and in-

---

**2.** That conduct of opposing counsel occurred before actual filing of suit or after rendition of judgment does not defeat the immunity of counsel for conduct in the course of representing an adverse party in litigation. *See Renfroe v. Jones & Assocs.,* 947 S.W.2d 285, 288 (Tex.App.-Fort Worth 1997, writ denied) (no cause of action against attorney for obtaining writ of garnishment against judgment debtor based on inaccurate facts); *see also FinServ Cas. Corp. v. Settlement Funding, LLC,* 724 F.Supp.2d 662, 674–76 (S.D.Tex.2010) (mem. op.) (law firm held immune for claims of fraud or conspiracy for conduct in seizing property not owned by debtor by writ of execution after judgment); *Dixon Fin. Servs., Ltd.*

*v. Greenberg, Peden, Siegmyer & Oshman, P.C.,* No. 01–06–00696–CV, 2008 WL 746548, at *9 (Tex.App.-Houston [1st Dist.] Mar. 20, 2008, pet. denied) (mem. op. on reh'g) (attorney held immune from liability for alleged misrepresentation to opposing party to secure satisfaction of arbitration award); *Lackshin v. Spofford,* No. 14–03–00977–CV, 2004 WL 1965636, at *3–5 (Tex.App.-Houston [14th Dist.] Sept. 7, 2004, pet. denied) (mem. op.) (attorney held immune from liability for making fee arrangements and charging and collecting fees to wife on credit cards in husband's name before filing divorce action as action was part of attorney's legal representation of wife in impending suit).

terpose any defense or supposed defense, without making themselves liable for damages." *White v. Bayless*, 32 S.W.3d 271, 275–76 (Tex.App.-San Antonio 2000, pet. denied) (affirming summary judgment because attorney owed no duty to adverse party in the context of representation of its client in litigation) (citing *Kruegel v. Murphy*, 126 S.W. 343, 345 (Tex.Civ.App.-Dallas 1910, writ ref'd)). An attorney may assert any of his client's rights without being personally liable for damages to the opposing party. *See Bradt v. West*, 892 S.W.2d 56, 71–72 (Tex.App.-Houston [1st Dist.] 1994, writ denied) (attorney not subject to liability to opposing attorney under any cause of action for conduct as part of representing client in litigation); *Morris v. Bailey*, 398 S.W.2d 946, 947 (Tex.Civ.App.-Austin 1966, writ ref'd n.r.e.).

Simply stated, under Texas law, attorneys cannot be held liable to opposing parties for "wrongful litigation conduct." *Renfroe*, 947 S.W.2d at 287–88; *Bradt*, 892 S.W.2d at 71–72. Any contrary policy would act as "a severe and crippling deterrent to the ends of justice because a litigant might be denied a full development of his case if his attorney were subject to the threat of liability for defending his client's position to the best and fullest extent allowed by law, and availing his client of all rights to which he is entitled." *White*, 32 S.W.3d at 276; *see Mitchell v. Chapman*, 10 S.W.3d 810, 811 (Tex.App.-Dallas 2000, pet. denied) (op. on reh'g) (in suit by unsuccessful litigant against attorney of opponent in prior case, affirming summary judgment in favor of attorney on ground that relationship between lawyer and third

party "was clearly adversarial" and lawyer "owed no legal duty" to opposing litigant), *cert. denied*, 531 U.S. 1152, 121 S.Ct. 1097, 148 L.Ed.2d 970 (2001).

### "Fraud" exception to litigation immunity

The majority recognizes that whether a cause of action for fraud exists in favor of a non-client against an attorney representing the opposing party in litigation focuses on the *type* of conduct engaged in, not on whether the conduct was *meritorious. See Dixon Fin. Servs.*, 2008 WL 746548, at *9; *Renfroe*, 947 S.W.2d at 288; *see also Taco Bell Corp. v. Cracken*, 939 F.Supp. 528, 532–33 (N.D.Tex.1996) (mem. op.) (Fitzwater, J.).[3] The dispositive question in determining the *type* of conduct by the attorney is whether the attorney's conduct was part of the discharge of his duties in representing the opposing party in the context of litigation or was foreign to the duties of an attorney, not whether the alleged conduct as characterized by the pleadings is fraudulent. *Taco Bell*, 939 F.Supp. at 532 (citing *Bradt*, 892 S.W.2d at 72). Instead, the majority focuses on Byrd's allegations of fraud, that is, intentional and knowing inclusion of false information in a bill of sale to assist Nancy in avoiding sales tax liability. Maj. Op. at 780–81. Thus, cases in which the fraud exception to an attorney's litigation immunity have been recognized are few.

As the Supreme Court in *Chu v. Hong*, stated, "[F]raud actions cannot be brought against an opposing attorney in litigation as reliance in those circumstances is unreasonable." 249 S.W.3d 441, 446 n. 19

---

**3.** *See also Toles v. Toles*, 113 S.W.3d 899, 911 (Tex.App.-Dallas 2003, no pet.) (holding attorney's conduct in representing client in divorce litigation, even if frivolous or without merit, "is not actionable [by opposing party] as long as the conduct was part of the discharge of the lawyer's duties in representing his or her

client"); *Chapman Children's Trust v. Porter & Hedges, L.L.P.*, 32 S.W.3d 429, 442 (Tex. App.-Houston [14th Dist.] 2000, pet. denied) (holding under Texas law it is the kind of conduct that is controlling in whether fraud may be actionable against opposing attorney, not whether conduct is meritorious).

(Tex.2008) (citing *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests,* 991 S.W.2d 787, 794 (Tex.1999)). A non-client generally has no claim against an opposing lawyer in litigation for fraud in the course of litigation because a party cannot justifiably rely on his or her opponent's lawyer's representations or silence as a matter of law. *McCamish,* 991 S.W.2d at 794 (stating that reliance is not justified when the representation or non-disclosure takes place in the adversarial context of litigation); *see Chapman Children's Trust,* 32 S.W.3d at 441–42 (affirming summary judgment on fraud and conspiracy claims by opposing party because law firm's actions were undertaken in discharge of its duties to its client); *Mitchell,* 10 S.W.3d at 811–12 (same).

### No issue of fact as to fraud as an exception

The attorney's litigation immunity is not absolute. It is a "qualified" immunity in that attorneys may be held liable for fraud but only in certain narrowly defined instances based on independent actions taken *outside* the scope of the attorney's legal representation of a client or based on conduct foreign to the duties of an attorney. *See Elliott v. West,* No. 01–09–00425–CV, 2011 WL 1233434, at *3 (Tex.App.-Houston [1st Dist.] Mar. 31, 2011, no pet.) (mem. op.) (holding attorneys could be liable for fraudulent actions only if their conduct was "outside the scope of [their] legal representation of the client" or "foreign to the duties of an attorney") (citing *Alpert v. Crain, Caton & James, P.C.,* 178 S.W.3d

398, 406 (Tex.App.-Houston [1st Dist.] 2005, pet. denied)).[4]

I disagree with the majority's conclusion that because Byrd alleged that Cantey Hanger misrepresented Nancy's status as manager and used her married name in the bill of sale in order to supposedly shift sales tax liability to Lucy Leasing, even if true, rendered Cantey Hanger's alleged conduct "foreign to the duties of an attorney" in the circumstances here. Assisting a client in drafting documents for transfer of title of an airplane, assisting the client in selling an asset awarded to the client in the divorce for needed cash, allowing the client to use her married name, and even assisting her in avoiding tax liability are not acts "foreign to the duties of an attorney." Each is a type of conduct in which an attorney typically engages in discharging duties to his client. *Dixon Fin. Servs.,* 2008 WL 746548, at *7–8 (noting that attorney cannot be liable to a third party for conduct that requires "the office, professional training, skill, and authority of an attorney").

Nor can I agree that the alleged conduct of Cantey Hanger was of the type that is an exception to the qualified immunity as independent commission of fraudulent or malicious acts "outside the scope of [the law firm's] legal representation of the client." *Id.* (citing *Alpert,* 178 S.W.3d at 406). Most cases that have applied that exception involved fraudulent business schemes, not litigation. *See Likover v. Sunflower Terrace II, Ltd.,* 696 S.W.2d 468, 472 (Tex.App.-Houston [1st Dist.] 1985, no writ); *see also Poole v. Houston & T.C. Ry. Co.,* 58 Tex. 134, 137 (1882).

4. An attorney may be subject to liability for negligent misrepresentation if the attorney's manifest awareness of a non-client's justifiable reliance on false information that was furnished by the attorney with intent that the non-client so rely. *McCamish,* 991 S.W.2d at 792 (allowing cause of action for negligent misrepresentation by non-client under Restatement (Second) of Torts § 552). No such claim is made here that Byrd justifiably relied on any false information communicated *to him* by Cantey Hanger, nor could any such reliance be justified because of the adversarial nature of their relationship. *Id.* at 794.

Those cases are distinguishable because neither involved litigation. *Poole* involved conduct of an attorney on behalf of an insolvent debtor in rerouting a shipment of goods via a bogus firm by a fictitious bill of lading contrary to the shipper's order to stop the delivery, conduct that the Supreme Court characterized as "foreign to the duties of an attorney." *Poole*, 58 Tex. at 137. *Likover* involved a fraudulent scheme for renovation and sale of an apartment complex. *Likover*, 696 S.W.2d at 469–72. Subsequently, the same court that decided *Likover* distinguished that case from one involving conduct of an attorney in the course of litigation, noting that *Likover* had "involved allegations that an attorney assisted clients in fraudulent business schemes and did not involve conduct taken in the context of litigation or another adversarial proceeding." *Dixon Fin. Servs.*, 2008 WL 746548, at *9.[5]

The "type" of conduct in which the attorney was engaged, that is, whether the attorney's conduct at issue was not foreign to the duties of an attorney or occurred in the scope of representation of his client in the context of litigation against the non-client, *does not change* based merely on the labeling of a conclusory pleading by the non-client that the attorney's conduct constitutes "fraud." This is because characterizing an attorney's conduct in representing "his client's rights as fraudulent does not change the rule that an attorney cannot be held liable for discharging his duties to his client. A plaintiff ... should not be allowed to 'salvage an otherwise untenable claim merely by characterizing it as tortious.'" *Dixon Fin. Servs.*, 2008 WL 746548, at *9 (citation omitted) (quoting *Miller v. Stonehenge/Fasa-Tex., JDC, L.P.*, 993 F.Supp. 461, 464 (N.D.Tex. 1998)).[6]

A defendant such as Cantey Hanger that moves for a traditional summary judgment must either negate at least one element of the plaintiff's theory of recovery,

5. Byrd also relies on *Querner v. Rindfuss*, 966 S.W.2d 661, 663 (Tex.App.-San Antonio 1998, pet. denied), which, in turn, relied on *Likover* and *Poole* for the proposition that an attorney can be liable for fraud in the litigation context. But neither *Likover* nor *Poole* involved conduct in the litigation context. Moreover, the San Antonio court held that the beneficiaries presented evidence raising fact issues as to whether the attorney engaged in fraud against the beneficiaries by conspiring with the executor to convert assets as well as whether the attorney was in privity with or owed the beneficiaries fiduciary duties, thereby placing the burden of production to establish the exception to the attorney's immunity on the beneficiaries. *Id.* at 670.

6. In *Bradt*, the plaintiffs alleged claims for conspiracy to maliciously prosecute, malicious prosecution, intentional infliction of emotional distress, tortious interference with contractual relations, and liability under the Texas Tort Claims Act. 892 S.W.2d at 65. The court upheld summary judgment for the opposing attorneys, disallowing recovery against opposing counsel *on any cause of action* for conduct arising out of representation

of his own client in litigation. *Id.* at 76; *see also Jurek v. Kivell*, No. 01–10–00040–CV, 2011 WL 1587375, at *4-6 (Tex.App.-Houston [1st Dist.] Apr. 21, 2011, no pet.) (mem. op.) (affirming summary judgment for opposing counsel on fraud claim by plaintiff based on failure to disclose existence of will during mediation); *Bosch v. Armstrong*, No. 01–08–00847–CV, 2009 WL 1635318, at *3-4 (Tex. App.-Houston [1st Dist.] June 11, 2009, pet. denied) (mem. op.) (upholding summary judgment for attorney on claims for malicious prosecution, defamation, fraud, and abuse of process by plaintiff against opposing counsel in underlying litigation); *Dixon Fin. Servs.*, 2008 WL 746548, at *9 (upholding summary judgment on claims for conversion, abuse of process, fraud and conspiracy to defraud by plaintiff against opposing counsel in underlying litigation); *Alexander v. Malek*, No. 01–06–01156–CV, 2008 WL 597652, at *3 (Tex.App.-Houston [1st Dist.] Mar. 6, 2008, no pet.) (mem. op.) (affirming summary judgment on claims based on attorney's representations to opposing party regarding trial date).

"Moore" Burger, Inc. v. Phillips Petroleum Co., 492 S.W.2d 934, 936 (Tex.1972), or plead and conclusively prove each element of an affirmative defense. *Walker v. Harris,* 924 S.W.2d 375, 377 (Tex.1996) (holding defendant landlord established no "duty" as matter of law, negating element of plaintiff's claim); *see also City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979). It is well settled that once the movant has done so, the burden shifts to the non-movant to produce evidence creating a fact issue on an element of the movant's affirmative defense or on its own defense. *Walker,* 924 S.W.2d at 377.

Courts have varied in how they have handled an exception such as fraud to the attorney's litigation immunity in the traditional summary judgment context. Some courts have held that the attorney must both establish its immunity as a matter of law and disprove the applicability of a pleaded exception to the immunity such as fraud as a matter of law. *Compare Toles,* 113 S.W.3d at 911–12 (defendant law firm must attack merits of and conclusively negate arguable fraud claim pleaded by plaintiff as exception to immunity); *Mendoza v. Fleming,* 41 S.W.3d 781, 787 (Tex. App.-Corpus Christi 2001, no pet.) (same), *with Reagan Nat'l Adver. of Austin, Inc. v. Hazen,* No. 03–05–00699–CV, 2008 WL 2938823, at *8–10 (Tex.App.-Austin July 29, 2008, no pet.) (mem. op.) (non-movant had burden to raise issue of fact on exception to immunity of attorney to defeat summary judgment based on immunity) (citing *Eckman v. Centennial Sav. Bank,* 784 S.W.2d 672, 675 (Tex.1990) (op. on reh'g) and *"Moore" Burger,* 492 S.W.2d at 936–37)); *Lackshin,* 2004 WL 1965636, at *3 (noting differing burdens applied by some courts and holding plaintiff non-movant was required to and failed to plead sufficient facts showing that he fell within fraud exception to immunity); *Chapman*

*Children's Trust,* 32 S.W.3d at 442 (holding once defendant established as matter of law that alleged actionable conduct was undertaken in course of representation of client, burden shifted to plaintiff to raise fact issue by sufficient facts to show conduct fell within exception to immunity).

I believe that the better view consistent with Texas's summary judgment practice is, as held by our sister court in Austin, that once Cantey Hanger established as a matter of law that its conduct was within the course of its representation of its client in the underlying divorce litigation against Byrd, it established its affirmative defense of immunity as a matter of law and that the burden shifted to Byrd to plead and present evidence raising a fact issue regarding the fraud exception, that is, his counter-defense of fraud to Cantey Hanger's affirmative defense. Cantey Hanger did not have to file yet another motion for summary judgment to conclusively disprove Byrd's fraud claim. *See Reagan Nat'l Adver. of Austin,* 2008 WL 2938823, at *8–10 (holding burden shifted to non-movant to raise issue of fact as to exception to immunity; movant attorney did not have to prove a negative); *see also Zeifman v. Nowlin,* 322 S.W.3d 804, 807–08 (Tex.App.-Austin 2010, no pet.); *Palmer v. Enserch Corp.,* 728 S.W.2d 431, 435 (Tex. App.-Austin 1987, writ ref'd n.r.e.) (citing *"Moore" Burger,* 492 S.W.2d at 936–37).

Contrary to the majority's characterization of Cantey Hanger's motion for traditional summary judgment, I do not read its motion as based on failure of Byrd's pleadings to state a cause of action. Cantey Hanger attached evidence to its motion, and Byrd responded with his own summary judgment evidence consisting of his affidavit and a copy of the bill of sale, which as the majority points out, was struck by the trial court. Pleadings are not competent summary judgment evi-

dence. *Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex.1995); *Hidalgo v. Surety Sav. & Loan Ass'n*, 462 S.W.2d 540, 543–44 (Tex. 1971). Thus, even assuming that Byrd pleaded fraud as an exception to the attorney immunity, he cannot rely on his pleadings to claim that he met his burden of producing evidence to create a fact issue. Byrd's affidavit averred that he never received the documents from Cantey Hanger to sign on behalf of Lucy Leasing, transferring the airplane to Nancy as ordered by the divorce decree (although according to him, Cantey Hanger's position is that he refused to sign them), and that Cantey Hanger never transferred the airplane to Nancy or completed its registration in her name, leaving the airplane still registered to Byrd's corporation, Lucy Leasing. Maj. Op. at 778–79. At worst, any failure to draft the documents for transfer of the plane in question to Nancy first, and assisting Nancy in transferring the airplane directly to a purchaser by signing the bill of sale in her married name and as "manager," instead, could hypothetically be malpractice, but Cantey Hanger owed no duty of care to Byrd.

I would hold that Byrd has neither alleged nor presented evidence raising an issue of fact that he is entitled to an exception to the attorney immunity doctrine for fraud. He has not alleged an intentional misrepresentation *to him* by the alleged bill of sale or that he relied to his detriment on any falsity in the alleged bill of sale. *See Easton v. Phelan*, No. 01–10–01067–CV, 2012 WL 1650024, at *9 (Tex. App.-Houston [1st Dist.] May 10, 2012, no pet.) (mem. op.) (holding allegations in petition, if true, alleged no facts that would have supported a finding of independent fraudulent actions such as a fraudulent

transfer, violating a direct duty to the non-client, qualifying as negligent misrepresentation, or any other claim a non-client may assert against an attorney); *see also Ortega v. Young Again Prods., Inc.*, No. H–12–0001, 2012 WL 3046116, at *9 (S.D.Tex. July 25, 2012) (mem. op. on reh'g) (plaintiff did not allege any misrepresentation by attorney or her client upon which he relied in connection with writs of execution); *FinServ*, 724 F.Supp.2d at 675–76 (complaint merely challenged merits of actions of attorneys in executing writs by failing to perform investigations and proceeding after receiving notice that property did not belong to plaintiffs, and it did not allege actions not within discharge of attorneys' duties to client).

Byrd candidly admits in his brief that the airplane in question, along with two others, was awarded to Nancy and now belong to her, that she is free to do with them as she wishes, and that although he "believes" that Cantey Hanger assisted Nancy in preparation of the bill of sale, he is unable to ascertain to what extent, if any, Cantey Hanger was even involved in the sale. The majority, as well as Byrd, also acknowledges that the divorce decree makes Nancy responsible for any ad valorem taxes, "liens, assessments, or other charges due or to become due on the personal property awarded to" her. Maj. Op. at 778. Since it appears that Nancy is thus responsible for any sales tax on the sale of the airplane, it would appear that Byrd's remedy is against Nancy by enforcement of the divorce decree for recovery of any such sales tax liability, which has yet to be charged to Lucy Leasing, or any other charge that may be incurred by Lucy Leasing as a result of the sale of the airplane.[7]

---

7. Nor has Byrd alleged why he would not have known that the airplane had not been

transferred to Nancy when he did not receive the transfer documents to sign within ten

Because the fraud action against Cantey Hanger is based upon its alleged conduct in discharge of its duties in representing Nancy against Byrd in the underlying divorce litigation, and because Byrd has not alleged or raised an issue of fact sufficient to establish a claim for fraud as an exception to the immunity, I would hold that immunity bars Byrd's claim of fraud against Cantey Hanger as well as their claims of conspiracy and aiding and abetting regarding the same conduct involving the transfer and bill of sale of the same airplane.[8] I concur in the remainder of the majority's opinion and would affirm the trial court's summary judgment in favor of Cantey Hanger as to all causes of action pleaded by Byrd.

days after the decree, if such be true, or why he was helpless as the owner of Lucy Leasing after the decree was signed, to transfer title to Nancy himself.

8. *See Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 583 (Tex.2001) (failure of claim for fraud necessarily defeated dependent conspiracy and aiding and abetting claim); *see also Kline v. O'Quinn*, 874 S.W.2d 776, 786–87 (Tex.App.-Houston [14th Dist.] 1994, writ denied) (absence of fiduciary duty between plaintiff and third party defeated aiding and abetting breach of fiduciary claim against defendant), *cert. denied*, 515 U.S. 1142, 115 S.Ct. 2579, 132 L.Ed.2d 829 (1995).